IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**BEKA BAKURADZE,**

        Petitioner,

v.                                       **CIVIL ACTION NO. 5:26-CV-18**
                                                    Judge Bailey

**MARY ADAMS**[1] in her official capacity as
the Interim Superintendent of the Northern
Regional Jail and Correctional Facility,
and **MICHAEL T. ROSE**, Acting Field
Office Director of Enforcement and
Removal Operations, Philadelphia Field
Office, Immigration and Customs
Enforcement,

        Respondents.

## ORDER

On January 22, 2026, the petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. The petition challenges petitioner's custody as a detainee of Immigration and Customs Enforcement ("ICE") and, at the time the petition was filed, petitioner was housed at Northern Regional Jail and Correctional Facility in Moundsville, West Virginia. This Court ordered respondents to show cause why the petition should not be granted. On January 30, 2026, respondent Adams filed a response, [Doc. 3], and on February 5, 2026, respondent Rose filed a Motion to Dismiss, [Doc. 6]. On February 19, 2026, petitioner filed a response to the Motion, [Doc. 8], and on February 26, 2026,

---

[1] As set forth in Adams's response, the petition erroneously named "Misty Adams" as "Mary Adams."

respondent filed a reply. [Doc. 9]. The petition and motion are now fully briefed and ripe for decision. For the reasons that follow, the Court will grant the petition.

## I. Misty Adams' response

As a preliminary matter, the Court notes that, at the time the petition was filed, on January 22, 2026, petitioner was housed at Northern Regional Jail and Correctional Facility ("NRJ") in Moundsville, West Virginia. As such, petitioner named Adams, as the interim Superintendent of that facility, as a respondent. As set forth in Adams' response, although petitioner was held at NRJ, the parties appear to agree that he was held there pursuant to a contract agreement with ICE and that Adams should therefore "be treated as nothing more than a nominal respondent." [Doc. 3 at 2]. And, indeed, the Court further notes that, according to respondent Rose, petitioner was transferred to Moshannon Valley Processing Center in Clearfield County, Pennsylvania, one (1) day after this case was filed. *See* [Doc. 6 at 8]. Nonetheless, as Adams was a proper respondent at the time the petition was filed, this Court retains jurisdiction over the instant petition. *See* ***Rumsfeld v. Padilla***, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.").

## II. Background

The basic facts of this case are not in dispute. Petitioner Beka Bakuradze is a citizen of Georgia who entered the United States on June 19, 2023. [Docs. 1 at 2; 6 at 7]. He was detained by the Department of Homeland Security ("DHS") and was subsequently released on August 8, 2023. [Docs. 1 at 2; 6-4 at 2]. At that time, petitioner

2

was served with a Notice to Appear, alleging that "You are an alien present in the United States who has not been admitted or paroled[,]" and petitioner was directed to appear in Immigration Court in New York City on January 31, 2024[2]. [Doc. 6-4]. Upon his release, he was issued an Interim Notice Authorizing Parole from ICE, noting that ICE had decided to parole petitioner pursuant to § 212(d)(5)(A)[3] of the Immigration and Nationality Act. [Doc. 8-1 at 14]. Petitioner alleges that he has since applied for asylum. [Doc. 1 at 14]. On December 31, 2025, police in Rochester, Pennsylvania, contacted ICE following a vehicle stop in which petitioner did not have a valid driver's license. [Doc. 6 at 8]. Petitioner was detained and has since been in immigration detention. [Doc. 1 at 5].

The Government argues that petitioner's detention is authorized by statute, specifically under 8 U.S.C. § 1225(b)(1). [Doc. 6 at 10]. The Government argues that because petitioner claimed a fear of returning to Georgia, he triggered the processes set forth in § 1225(b)(1)(B), which include referral for proceedings to consider his application for asylum and that, while he is subject to this process, § 1225(b)(1)(B)(ii) mandates his detention. [Id.].

In contrast, petitioner argues that noncitizen residents who previously entered the country and were already in the United States are subject to detention under 8 U.S.C. § 1226(a). [Doc. 1 at 17–18]. Notably, individuals detained pursuant to § 1226(a) are entitled to a bond hearing.

---

[2] From respondent's attached exhibits, it appears that this hearing has been rescheduled for June 22, 2027. See [Doc. 6-5 at 1].
[3] Section 212(d)(5)(A) of the Immigration and Nationality Act is codified at 8 U.S.C. § 1182(d)(5)(A).

3

### III.  Legal Standards

**A. Motion to Dismiss**

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is plausible on its face.' **Bell Atl. Corp. v. Twombly**, 550 U.S. 554, 570 (2007) (emphasis added)." **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995). In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Id. at 555, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." **Id**. at 570.

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." **Williams v. Branker**, 462 Fed.App'x. 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." **Witthohn v. Fed. Ins. Co.**, 164 Fed.App'x. 395, 396

(4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id*. at 396–97.

## B. Petitions Pursuant to 28 U.S.C. § 2241.

28 U.S.C. § 2241 gives this Court the authority to issue writs of habeas corpus to individuals "in custody in violation of the Constitution or laws or treaties of the United States." The "heart of habeas corpus" is a petitioner's challenge to his confinement or duration of confinement where petitioner is "seeking immediate release or a speedier release from that confinement." **Preiser v. Rodriguez**, 411 U.S. 475, 498 (1973). Immigration cases in which detainees challenge their confinement thus fall within this "core" of habeas corpus. **Trump v. J. G. G.**, 604 U.S. 670, 672 (2025). Petitioner bears the burden of proving by a preponderance of the evidence that he is being held contrary to the law. **Walker v. Johnston**, 312 U.S. 275, 286 (1941).

## IV. Discussion

### A. Petitioner's detention is governed by 8 U.S.C. § 1226.

At the core of the dispute in this case is the question of whether petitioner's current detention is authorized, as respondent claims, by 8 U.S.C. § 1225(b)(1), which concerns the "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," *see* § 1225(b)(1), or 8 U.S.C. § 1226, which "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." **Jennings v. Rodriguez**, 583 U.S. 281, 289 (2018). As the Western District of North Carolina has recently summarized,

> The distinction between "aliens seeking admission into the country" governed by § 1225(b) and "aliens already in the country" governed by

5

> § 1226(a), **Jennings**, 583 U.S. at 289, 138 S.Ct. 830, "makes sense in the broader context of U.S. immigration law." **Hasan v. Crawford**, 800 F.Supp.3d 641 (E.D. Va. 2025). That is, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." **Zadvydas v. Davis**, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). For those who have already entered the United States, "the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" **Leng May Ma v. Barber**, 357 U.S. 185, 187, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958) (citation omitted).

**Said v. Noem**, 2025 WL 3657217, at *5 (W.D. N.C. Dec. 17, 2025) (Cogburn, Jr., J.).

As set forth above, in this case, Bakuradze has been in the United States since being released from ICE custody sometime around August 8, 2023. Upon his release, he was issued an Interim Notice Authorizing Parole from ICE, noting that ICE had decided to parole petitioner pursuant to § 212(d)(5)(A) of the Immigration and Nationality Act. [Doc. 8-1 at 14]. Section 212(d)(5)(A) of the Immigration and Nationality Act is codified at 8 U.S.C. § 1182(d)(5)(A). That section permits the Secretary of Homeland Security to temporarily parole an alien for humanitarian reasons or public benefit, "but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

However, respondent contends that, because petitioner claimed a fear of returning to Georgia, he triggered further proceedings to consider his asylum application and thus may now be detained under 8 U.S.C. § 1225(b)(1)(B)(ii). [Doc. 6 at 10–11]. That section, in turn, allows for an alien arriving in the United States to be detained "at the time of the interview" for further consideration of their application for asylum.

The Court finds that respondent's interpretation is clearly inapplicable here. Section 1225(b)(1)(B)(ii) states "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Thus, the statute governs an aliens detention as they are "arriving in the United States" and are interviewed by an asylum officer who determines they have a credible fear of persecution. The Government argues that because Bakuradze was paroled pursuant to § 1182(d)(5)(A), the authority for his detention remains § 1225(b)(1), just as if he was "arriving in the United States." [Doc. 6 at 12]; see § 1182(d)(5)(A) (when an alien is returned to custody from parole in this section "his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."). Respondent likewise cites to the Supreme Court's case ***Dep't of Homeland Sec. v. Thuraissigiam***, 591 U.S. 103, 139 (2020), for the proposition that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" ***Thuraissigiam*** was discussing an alien "at the threshold" who was arguing "[b]ecause he succeeded in making it 25 yards into U. S. territory before he was caught, he claims the right to be treated more favorably." ***Id.*** at 139. As Judge Berger in the Southern District

7

recently noted, **Thuraissigiam** distinguished "between 'aliens who have established connections in this country' and 'have due process rights in deportation proceedings' and 'alien[s] at the threshold of initial entry' who are subject to the conditions for entry set by Congress" and noted that "This distinction is particularly pertinent here, where the Respondents seek to apply the quite limited procedures of § 1225 to noncitizens within the United States." **Umarov v. Mason**, No. 2:26-CV-00081, 2026 WL 381614, at *7 (S.D. W.Va. Feb. 11, 2026) (Berger, J.). Like Bakuradze, Umarov was paroled into the United States and was seeking asylum; following a number of recent decisions in this state and elsewhere, that court found that

> mandatory detention, without a bond hearing, of individuals present in the United States violates the right to due process. Thus, given that there is a reasonable interpretation of the statute that avoids the constitutional issue, the Court concludes that § 1226, rather than § 1225, applies to noncitizens already in the country while removal proceedings remain pending.

**Umarov v. Mason**, No. 2:26-CV-00081, 2026 WL 381614, at *6 (S.D. W.Va. Feb. 11, 2026); *see also* **Briceno Solano v. Mason**, No. 2:26-CV-00045, 2026 WL 311624 (S.D. W.Va. Feb. 4, 2026) (Johnston, J.); **Aroca v. Mason**, No. 2:26-CV-00057, 2026 WL 357872 (S.D. W.Va. Feb. 9, 2026) (Goodwin, J.).

Unlike the above-cited cases, however, in which the Government sought to have petitioners' detention governed by 8 U.S.C. § 1225(b)(2)(A), here, the Government asserts that Bakuradze's detention is authorized by § 1225(b)(1), and, notably, petitioner's case is distinguished from the above cases in that his Notice Authorizing Parole stated that ICE had determined to parole him pursuant to 8 U.S.C. § 1182(d)(5)(A).

8

However, the Court is likewise persuaded by the recent opinion by the Western District of North Carolina in *Said v. Noem*, 2025 WL 3657217, at *4–6 (W.D.N.C. Dec. 17, 2025) (Cogburn, Jr., J.). In *Said*, petitioner, like Bakuradze, had been paroled pursuant to 8 U.S.C. § 1182(d)(5)(A); there, the court found that

> Because the DHS issued [a Notice to Appear] designating Petitioner, a noncitizen, as present without admission or parole, § 1226(a) governs his detention going forward, regardless of prior processing under expedited removal or DHS' subsequently adopted position in *Yajure Hurtado*. Regardless of whether Petitioner was originally detained under § 1252(b)(1), Respondents cannot ignore the plain language of the [Notice to Appear] and retroactively recharacterize the Petitioner, who has clearly been present in the United States without admission and paroled for over a year, as an "arriving alien" or an "applicant for admission" to support his continued detention without a bond hearing.

*Id.* at *6; *but see* *Faqirzada v. Rokosky*, 2026 WL 63614 (D. N.J. Jan. 8, 2026) (habeas petitioner whose parole under § 1182(d)(5)(A) was terminated pursuant to an arrest warrant to appear for removal proceedings was not entitled to a bond hearing). In this case, Bakuradze's Notice to Appear likewise designated him as an alien present without admission or parole, and the Court finds that § 1226(a) therefore governs his detention.

**B.     Petitioner's detention without a bond hearing violates petitioner's due process rights.**

Because petitioner's detention is governed by 8 U.S.C. § 1226, he is entitled to a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). No such bond hearing has been provided to petitioner, and it appears his appearance in

9

Immigration Court is over a year away, on June 22, 2027. *See* [Doc. 6-5 at 1]. As aptly stated by Judge Goodwin, "This detention-first and hearing-sometime-later practice finds no support in the Constitution. . . . The Constitution does not tolerate what would be plainly unlawful in the criminal context simply because the detention is labeled civil." **Larrazabal-Gonzalez v. Mason**, 2026 WL 221706, at *5 (S.D. W.Va. Jan. 28, 2026).

The respondent contends that this Court should reject petitioner's due process arguments because the Government contends "applicants for admission like Petitioner lack any constitutional due process rights with respect to admission aside from the rights provided by statute." [Doc. 6 at 15] (citations omitted). But the instant petition is not about petitioner's admission nor the merits of his asylum claim; he is challenging his detention without a hearing and is asserting the rights under this procedure set forth by Congress. To the extent respondent asserts the broader argument that petitioner lacks constitutional due process rights with respect to his detention, this argument clearly lacks merit. "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." **Trump v. J. G. G.**, 604 U.S. 670, 673 (2025) (quoting **Reno v. Flores**, 507 U.S. 292, 306 (1993)). "[W]hen the government deprives a person of a protected liberty or property interest, it is obliged to provide 'notice and opportunity for hearing appropriate to the nature of the case.'" **D.B. v. Cardall**, 826 F.3d 721, 741 (4th Cir. 2016) (quoting **Cent. Hanover Bank & Tr. Co.**, 339 U.S. 306, 313 (1950)). In this case, petitioner has not been provided with a bond hearing, and insofar as he is being held pursuant to his June 2027 hearing in Immigration Court, such delay would clearly violate petitioner's due process rights. *See, e.g.* **Solano**, 2026 WL 311624, at *16 (bond hearing under § 1226(a) set three weeks after petitioner detained was a violation of

10

petitioner's due process rights); *Larrazabal-Gonzalez*, 2026 WL 221706, at *5 (petitioner's next immigration hearing was set for a hearing nearly nine months out); *Portillo v. Hott*, 322 F. Supp. 3d 698, 706 (E.D. Va. 2018) (14 month detention without a bond hearing under § 1226(c), governing the detention of *criminal aliens*, violated due process).

## V.   Conclusion

For the reasons set forth above, respondent's Motion to Dismiss [**Doc. 6**] is **DENIED**, the Petition for Writ of Habeas Corpus [**Doc. 1**] is hereby **GRANTED**, and respondent is hereby **ORDERED** to release petitioner from civil immigration custody and is hereby prohibited from re-arresting and detaining petitioner absent a significant change in circumstances to justify detention or subject to the determination of an Immigration Judge. The Clerk is further **DIRECTED** to **STRIKE** this case from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

DATED: March 2, 2026.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

11